**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

THOMAS M. RITTWEGER,

    Debtor                                            Chapter 7
                                                     Case No. 05-56311 (KCF)

- - - - - - - - - - - - - - - - - - - - - - - - -X
KAREN E. BEZNER, TRUSTEE

    Plaintiff,

        vs.                                     Adversary No. 06-1822

THOMAS M. RITTWEGER

    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OPINION - TRIAL BY DECLARATION**

Karen E. Bezner, Esquire
567 Park Avenue, Suite 103
Scotch Plains, New Jersey 07076
Attorney for Plaintiff/Trustee

Eugene D. Roth, Esquire
Valley Park East
2520 Highway 35, Suite 305
Manasquan, New Jersey 08736

Thomas Rittweger ("Debtor" or "Rittweger") filed a voluntary Chapter 7 petition on October 15, 2005. Soon after Mr. Rittweger's January 10, 2006 341(a) meeting, he was incarcerated for conspiracy and securities convictions. Since his sentence was for more than 11 years, it is assumed that he will not be released anytime in the near future.

The Debtor's schedules listed only personal property worth $4,240 and no real property. Mr. Rittweger's listed unsecured debt totaled $22,539,602, including debts owed to the U.S. Securities and Exchange Commission, the Internal Revenue Service, the New Jersey Division of Taxation, and various banks. Schedule I and J of the Debtor's petition did not seem to reflect accurate information. In order to ascertain accurately the Debtor's financial condition and what he did with the money he earned, the Trustee served Mr. Rittweger with a subpoena dated January 20, 2006. The subpoena directed the Debtor to produce documents pertaining to his personal and business financial affairs for the two (2) year period prior to the filing of his petition, and to produce tax returns for tax years 2001 to 2004. The purpose of the subpoena was to attempt to ascertain the disposition of some $22,539,602.14 in claims, consisting of credit cards, investor claims, 1040 income tax and restitution, and other claims as listed in the Debtor's petition. Mr. Rittweger did not respond to the subpoena.

On April 25, 2006, this Court ordered the Debtor to provide the documents requested. Receiving no response again, the Trustee approached Patricia Rittweger, Debtor's wife, asking her for Debtor's financial information. Patricia Rittweger provided the Trustee with a document entitled "Statement of Financial Condition," signed by the Debtor on February 4, 2002, stating that he has, as of that date, assets totaling $1,328,770.90 including:

> Cash assets of $551,850.48;
> Real estate worth $610,000;
> Personal property worth $9,000;
> Securities valued at $50,000;
> Pension accounts worth $22,820; and
> A 1997 Sea Ray boat valued at $75,000.

The statement also indicates that Mr. Rittweger transferred approximately $900,000 from Zurich to the U.S. allegedly to pay state and federal taxes. Additionally, on a form issued by the Federal Probation System of the U.S. District Court dated July 14, 2003, Mr. Rittweger listed among other assets a Rolex watch, business interests in Tower Consulting Group, Tower Financial Limited, Ocean Financial Limited, Parama Limited, Parama Limited, LLP, four bank accounts, a 401K account, two life insurance policies, three motor vehicles, and three parcels of real estate.

On January 27, 2006, the Debtor's 18 year old daughter accepted service of a Trustee's subpoena dated January 20, 2006 directed to her father. Debtor's counsel contacted the Trustee in February 2006 stating that the Debtor had no access to the documents requested, but that counsel was going to visit the Debtor in prison to discuss the matter. Debtor's counsel provides as proof a letter dated February 24, 2006 simply stating that counsel was in the process of filing a visitation form and would be in a position to respond to the January 20th subpoena after the visit. On March 13, the Trustee filed a Motion to Extend Time to Move to Dismiss and a Motion to Extend Time to Object to Discharge. This Court granted both motions in April 2006. In the meantime, in March 2006, the Trustee also filed a Motion to Compel Compliance with Subpoena, which the court also granted. The Debtor alleges that the documents he has not been able to produce were destroyed in a flood in his former wife's garage in early September 2006.

On May 12, 2006, the Trustee initiated this adversary proceeding charging that the Debtor should be denied a discharge under 727(a)3, 727(a)(4)(D), 727(a)(5), and 727(a)(6). The Court need

3

not assess whether the Debtor should be denied a discharge under all these provisions. If the Court determines that Debtor should be denied discharge even under one of these provisions, it is sufficient to deny discharge.

Congress described § 727's general discharge provisions as "the heart of the fresh start provisions of the bankruptcy law." H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). Courts have uniformly held that § 727 must be construed liberally in favor of the debtor. *See* In re Brown, 108 F.3d 1290 (10th Cir. 1997); In re Burgess, 955 F.2d 134 (1st Cir. 1992); In re Adeeb, 787 F.2d 1339, 1342 (9th Cir.1986). The Third Circuit has recognized that "[c]ompletely denying a Debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). At the same time, the Debtor "has the obligation to place his financial affairs before them[the parties to the bankruptcy proceeding] by filing a complete and accurate petition, schedules, and statement of financial affairs with the Court....In bankruptcy administration, the system will collapse if debtors are not forthcoming.". *See* In re Tully, 818 F.2d 106, 111 (1st Cir. 1987).

> 11 U.S.C. § 727(a)(3*)* denies a debtor's discharge for:
> the debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of this section is to enable creditors, with the assistance of adequate books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. Blockman v. Becker (In re Becker)*,* 74 B.R. 233, 236 (Bankr.E.D.Tenn.1987). "In determining the reasonableness of a debtor's records, the Court should consider: education, experience, and sophistication of the debtor; the volume of the debtor's

4

business; the complexity of the debtor's business; the amount of credit extended to the debtor in his business and any other circumstances that should be considered in the interest of justice." Id. The decision to deny a discharge under § 727(a)(3) is to be made on a case-by-case basis based on specific factual circumstances in each case. Finch v. Finch, 2004 WL 2272152, at *6 (Bankr.M.D.Tenn. Oct. 6, 2004). A party objecting to discharge on the basis that the debtor kept inadequate records must show that (1) the debtor failed to keep or preserve adequate records, and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. In re Jacobowitz, 309 B.R. 429 (S.D.N.Y. 2004). When a debtor is engaged in business, he has a duty to maintain records in a manner consistent with what is normally expected of businesses of the same complexity, in the context of a claim of non-dischargeability due to inadequate record-keeping. Id. Under the "record-keeping" discharge exception, while a debtor may justify a failure to keep records in some cases, discharge may be granted only if debtor presents an accurate and complete account of his financial affairs. In re Schifano, 378 F.3d 60 (1st Cir. 2004). In assessing adequacy of debtor's financial records under the "record-keeping" discharge exception, a bankruptcy court may consider several relevant factors, such as the education, experience and sophistication of debtor, volume and complexity of debtor's business, amount of credit extended to the debtor or his business, and any other circumstances that should be considered in interest of justice. Id. Under "record-keeping" discharge exception, a creditor need not prove fraudulent intent, but only that the debtor unreasonably failed to maintain sufficient records to permit his financial situation to be adequately ascertained. Id. Doubts as to the adequacy of the records should be resolved in favor of the honest debtor. In re Jackson, 2004 WL 2595900, at *5 (Bankr.D.N.H. Apr. 26, 2004).

The Debtor argues that the Trustee has failed to carry the requisite burden of proof. Alternatively, the Debtor argues that the records produced by the Debtor and his former wife were adequate. The Debtor cites to In re Schwartz, 227 B.R. 626 (Bankr. E.D.Pa. 1998), in claiming that since he provided substantial information regarding his financial transaction, the failure to provide certain other records without gaps is not determinative as to whether the debtor should be denied a discharge. The Debtor claims that his failure to provide the records subpoenaed by the Trustee was due to a flood in his former's wife's garage where his financial records were kept in boxes.

Even on certifications, it is hard to believe that a Debtor who holds interest in multiple companies, is the owner of large assets, has overseas bank accounts, has over $22 million in debt, and is a professional consultant, keeps his only records in hard copy in boxes in a garage.

Even if Mr. Rittweger failed to keep records, discharge may be granted if he presented an accurate and complete account of his financial records. Clearly, Mr. Rittweger failed to do so. In his bankruptcy petition, Mr. Rittweger claimed he had absolutely no real property and only $4000 in personal property. He also claimed he had only $40 in cash. The petition was also highly suspect in that Mr. Rittweger claimed that he only received $200 per month in income and had $786 per month in expenses while having over $22 million in personal debt with no assets to show for it. In any case, the Court need not simply doubt the accuracy of the petition, as there is proof of the Debtor's misrepresentations. The Statement of Financial Condition received from the Debtor's former wife and the form issued by the Federal Probation System of the U.S. District Court both prove that the Debtor did not provide "an accurate and complete" account of his financial affairs. Additionally, the Debtor's counsel indicates that the Trustee's should have known of the Debtor's inability to comply due to his incarceration. However, the Debtor could have provided records even

6

while being incarcerated by asking his counsel to deliver the records supposedly kept in his wife's garage or asked his former wife to send them to the Trustee. The flood took place over seven months after Mr. Rittweger was served with the subpoena. There is simply no excuse for not having complied with the subpoena in seven months, for not having completed the bankruptcy petition honestly and accurately, and for not keeping records in a manner that was appropriate for someone in Mr. Rittweger's position.

Trustee's motion to deny discharge is granted pursuant tp 723(a)(3). Trustee to submit a form of Judgement.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: February 14, 2008